NAREG GOURJIAN (CA Bar No. 221861)
LUSINE NAZARETYAN (CA Bar No. 287606)
GOURJIAN LAW GROUP, P.C.
101 N. Brand Blvd., Suite 1220
Glendale, California 91203
Telephone: (818) 956-0100
Facsimile: (818) 956-0123

Attorneys for Petitioner,
Maureen Ridley

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| United States of America, | No. CR 93-583 |
|---|---|
| Plaintiff/Respondent | **PETITION FOR WRIT OF ERROR CORAM NOBIS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION IN SUPPORT THEREOF** |
| vs. | |
| Maureen Chan, | |
| Defendant/Petitioner. | |

    Petitioner Maureen Ridley, by and through counsel, hereby petitions this Honorable Court for a writ of error coram nobis allowing her to withdraw her plea of guilty and vacating judgment in the above entitled case.[1]

///

///

///

---

[1] Petitioner will hereafter be referred to as Maureen Ridley.

# INTRODUCTION

The petitioner herein, Maureen Ridley, is a citizen of the United Kingdom. She is sixty-five years old and has been a lawful permanent resident of the United States since July 24, 1973. Ms. Ridley has strong ties to the United States as her husband, mother, brother and child all reside in the U.S.

On May 15, 2000, on advice of her then counsel, Terrence Roden (now deceased), Ms. Ridley entered a plea of guilty to three counts of perjury in violation of 18 U.S.C 1623. The court sentenced Ms. Ridley to two months imprisonment, three years supervised release and imposed a fine of $150.00 (Attached hereto as Exhibit "A", is a true and correct copy of "Criminal Minutes", Case No. 93-583). Prior to the plea, however, Mr. Roden assured, Ms. Ridley - albeit mistakenly - that her guilty plea would not subject her to any adverse immigration consequences. In fact, when Ms. Ridley asked her counsel what consequences her plea may have, his response was simply that she had nothing to worry about.

As evidenced in the attached copy of her U.S. Passport, Ms. Ridley has repeatedly travelled in and out of the United States without any incident. (Attached hereto as Exhibit "B", is a true and correct copy of Ms. Ridley's passport). There was no indication to suggest that Ms. Ridley would lose her lawful permanent residency and be ordered excluded from the United States based on her 12-year old plea.

On February 28, 2012, however, Ms. Ridley was unexpectedly apprehended by Customs and Border Protection ("CBP") at the Los Angeles International Airport when she returned from one of her many trips. On this occasion, CBP confiscated Ms. Ridley's passport and lawful permanent resident card, Form I-551, and requested that she appear at a subsequent interview at the CBP secondary inspection office in Los Angeles. These appointments occurred on a repeated basis over several months. Finally, on November 15,

2012, Ms. Ridley was charged pursuant to 212(a)(2)(A)(i)(I) as an alien who is convicted of a crime involving moral turpitude. (Attached hereto as Exhibit "C", is a true and correct copy of "Notice to Respondent.")

Apparently, due to her plea in this case, Ms. Ridley is now facing lifetime banishment from the United States preventing her from being with, and caring for, her family. Ms. Ridley is therefore presenting the instant petition for a writ of coram nobis because she was denied effective assistance of counsel when her trial counsel misadvised her regarding the immigration consequences of her plea.

## MEMORANDUM OF POINTS AND AUTHORITIES

## LEGAL ARGUMENT

### I. Pursuant To The Writ of Coram Nobis, Petitioner Should Be Allowed To Withdraw Her Guilty Plea.

District courts have authority to issue a writ of coram nobis under the All Writs Act, 28 U.S.C. 1651(a). The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served [their] sentence and is no longer in custody. *Estate of McKinney By and Through McKinney v. U.S.* (9th Cir. 1995) 71 F.3d 779, 781.

To qualify for the writ, a petitioner must establish (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case and controversy requirement of Article III; and (4) the error suffered is of the most fundamental character. *Hirabayashi v. U.S.* (9th Cir. 1987) 828 F.2d 591, 604. As explained below, all the requirements for a writ of error coram nobis are satisfied here.

### A. A More Usual Remedy Is Not Available Because Ms. Ridley Has Served Her Sentence And Is No Longer in Custody.

Here, the first element is certainly satisfied since Ms. Ridley is no longer in custody. Courts have found that a defendant satisfies the first requirement that *a more usual remedy is not available*, by establishing that defendant is no longer in custody and, as a result, not eligible for habeas relief. *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1012 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356). As such, since Ms. Ridley has already served her sentence, there is no other remedy available for her.

### B. Ms. Ridley Did Not Attack Her Conviction Earlier Because She Was Unaware That She Would Be Subject to Deportation.

Second, Ms. Ridley has valid reasons for not attacking her conviction earlier. In fact, it was not until November 15, 2012, that Ms. Ridley learned of the adverse immigration consequences of her plea. In *U.S. v. Kwan*, the court held that "because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is <u>not</u> subject to a specific statute of limitations. In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1012-13 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356). "While courts have not elaborated on what constitutes a "sound" reason, our review of coram nobis cases reveals that courts have denied relief on this ground where the petitioner has (1) delayed for no reason whatsoever; (2) where the respondent demonstrates prejudice, or (3) where the petitioner appears to be abusing the writ." *Id.* at 1013.

In the instant case, Ms. Ridley could not have reasonably pursued a post-conviction remedy because at the time of making the plea and until very recently, she was unaware that she would be inadmissible to the United States as a result of it. First, Ms. Ridley was

assured by her former attorney that her plea would not result in any adverse immigration consequences. Second, Ms. Ridley has traveled in and out of the United States for eight years without any incident. There was nothing to suggest that she would lose her lawful permanent residency status and be ordered inadmissible to the United States based on her conviction. Third, in 2004, U.S. Citizenship and Immigration Services renewed Ms. Ridley's permanent resident status for ten years. (Attached hereto as Exhibit "D", is a true and correct copy of Ms. Ridley's "Permanent Resident Card"). Since Ms. Ridley successfully renewed her residency status, she had no reason to believe she faced any adverse immigration consequences as a result of her plea.

It was not until recently that Ms. Ridley learned of the immigration consequences, in particular, on November 15, 2012, when INS initiated formal removal proceedings against her. Indeed, upon learning of the adverse consequences, Ms. Ridley acted with due diligence and immediately consulted with attorneys to determine her available remedies. Certainly, Ms. Ridley has provided a reasonable explanation for not challenging her conviction earlier, the government has not suffered any prejudice, and Ms. Ridley is not abusing the writ—she is not attempting to re-litigate claims or circumvent procedural bars. Ms. Ridley simply did not know about the deficiencies of the instant conviction until it was too late to attack them on grounds other than by a writ of error coram nobis.

## C. Adverse Consequences Exist From The Conviction To Satisfy The Case And Controversy Requirement Of Article III.

Petitioner has suffered adverse consequences as a result of the plea that was the product of incorrect advice. In *U.S. v. Kwan*, the court held that it is undisputed that the possibility of deportation is an "adverse consequence" sufficient to satisfy Article III's case or controversy requirement. *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1014 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356).

As mentioned above, formal removal proceedings have been initiated against Ms. Ridley due to her plea. As a result of this plea, Ms. Ridley is now facing the harsh consequences of permanent exclusion from the United States.

**D. The Error Suffered Is Of The Most Fundamental Character.**

Petitioner has suffered such a fundamental error in that her prior counsel affirmatively misadvised her regarding the immigration consequences. An ineffective assistance of counsel claim requires two elements: (1) counsel's performance fell below an objective standard of reasonableness; and (2) that deficient performance prejudiced the defendant. *Strickland v. Washington* (1984) 466 U.S. 668, 669.

Several Courts of Appeal have held that affirmative misadvise on immigration matters can give rise to ineffective assistance of counsel. In *U.S. v. Kwan*, defendant *asked* counsel whether pleading guilty would cause him to be deportable, and counsel chose to advise him. *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1015-16 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356). Counsel represented himself as having expertise in the immigration consequences of criminal convictions. *Id.* at 1016. Moreover, "counsel never informed Kwan of the options that remained open to him prior to sentencing, and counsel never informed the sentencing judge that a sentence only two days shorter than the sentence ultimately imposed would enable Kwan to avoid deportation and remain united with his family." *Id.* at 1016. The court held that counsel's performance was objectively unreasonable and met the first prong of the *Strickland* test. *Id.* at 1017.

Similarly, in *U.S. v. Couto*, counsel assured defendant that while deportation was a possibility, "there were many things that could be done to prevent [defendant] from being deported." *U.S. v. Couto* (2d Cir. 2002) 311 F.3d 179, 183. Counsel's advice was, however, incorrect. "The 1996 amendments to the Immigration and Nationality Act eliminated all discretion as to deportation of non-citizens convicted of aggravated felonies which meant

defendant's plea of guilty meant virtually automatic, unavoidable deportation." *Id.* at 183-84. The court found counsel was ineffective in affirmatively misrepresenting to the defendant deportation consequences of a guilty plea. *Id.* at 188.

The reasonableness of counsel's performance in the context of advising of immigration consequences instills upon counsel a duty at least to know the law. "It is a basic rule of professional conduct that a lawyer must maintain competence by keeping abreast of Ridleyges in the law and its practice." *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1016 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356). 'Reasonably competent attorneys should know that it is not appropriate or responsible to hold themselves out as authorities on a difficult and complicated subject matter with which they are not familiar. Candor concerning the limits of one's professional expertise, in other words, is within the range of duties reasonably expected of defense attorneys in criminal cases. As the dissenting judge on the Kentucky Supreme Court put it, "I do not believe it is too much of a burden to place on our defense bar the duty to say, 'I do not know.'" *Padilla v. Kentucky* (2010) 559 U.S. 356.

In the instant case, prior counsel's performance was objectively unreasonable because counsel affirmatively misled Ms. Ridley about the immigration consequences of her plea. Similar to the defendant *Kwan* who asked counsel whether pleading guilty would cause him to be deportable, Ms. Ridley asked counsel whether she would suffer immigration consequences as a result of her plea. Given that Ms. Ridley asked counsel about the immigration consequences demonstrates that she placed particular emphasis on the immigration ramifications in deciding whether or not to plead guilty. However, Mr. Roden confidently reassured her that there would not be any adverse consequences as a result of her plea. On the contrary, however, the Immigration and Nationality Act § 212(a)(2)(A)(ii)(II) clearly provided that "a non-citizen is inadmissible who is convicted of just one crime

involving moral turpitude, whether before or after admission." (Attached hereto as Exhibit "E", is a true and correct copy of Immigration Attorney Amira-Al-Alami's letter regarding the immigration consequences of the plea).

Counsel's performance was objectively unreasonable because if counsel did not have the requisite competence in immigration law, he should not have affirmatively advised Ms. Ridley regarding the immigration consequences of her plea without referring to an immigration attorney or he should have simply stated "I do not know." Counsel was also ineffective for failing to investigate the immigration consequences of the plea and failing to negotiate an alternative plea to a non-deportable offense. As such, counsel's performance fell below an objective standard of reasonableness.

As to the second prong of a *Strickland* analysis, counsel's deficient performance prejudiced the defendant. "The determinative question is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Glover v. United States*, 531 U.S. 198, 202-03.

In *U.S. v. Kwan*, the court stated that "a sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal. Fed.R.Crim.P. 32(e) (1996). There is a reasonable probability that the sentencing court in this case would have considered the significant change in the immigration consequences of Kwan's plea to be a fair and just reason for withdrawing his plea. While the sentencing court's decision to grant or deny a motion to withdraw is discretionary, to show prejudice [Kwan] need only show 'a probability sufficient to undermine confidence in the outcome' that he could have withdrawn his plea." *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1018 (abrogated on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356).

-8-
PETITION FOR WRIT OF ERROR CORAM NOBIS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION IN SUPPORT THEREOF

Had Ms. Ridley been properly advised of the immigration consequences of the plea, it is reasonably probable that she would have never entered a guilty plea. She may have even escaped the immigration consequences by re-negotiating the plea or exercising her Constitutional right to a trial. Her whole family is in the United States and she would have done all she could to alleviate any adverse immigration consequences. The prejudice is real, concrete, severe, and directly linked to Ms. Ridley's ineffective counsel.

## CONCLUSION

For the aforementioned reasons, Petitioner asks this Court to grant her Petition for Writ of Coram Nobis.

Dated: May 15, 2013                                    GOURJIAN LAW GROUP, P.C.

                                                       By: _____
                                                       Nareg Gourjian, Esq.
                                                       Attorney for Petitioner
                                                       Maureen Ridley